

# THE ATTORNEY GENERAL
# OF TEXAS

October 14, 1986

JIM MATTOX
ATTORNEY GENERAL

Mr. Marlin W. Johnston                    Opinion No. JM-560
Commissioner
Texas Department of Human Services        Re: Validity of a pilot program
P. O. Box 2960                            under which the Department of
Austin, Texas   78769                     Human Services would provide
                                          prescription drugs to eligible
                                          Medicaid recipients

Dear Mr. Johnston:

You ask whether a proposed change in the Medicaid Vendor Drug
Program of the Texas Department of Human Services would violate
certain federal anti-trust laws. You indicate that, under current
policy, Medicaid recipients may receive a number of free prescriptions
per month. The department reimburses the providers of prescriptions
for the cost of the prescriptions and pays the providers a dispensing
fee. Under the proposed change, the department would contract with
private distributors who would access and maintain a supply of
frequently-prescribed products and would provide pharmacies with item-
for-item replacements for products dispensed to Medicaid recipients.
The department would continue to pay the pharmacies a dispensing fee.
You indicate that the advantage sought by the proposal lies in the
lower drug prices available under direct state contracts as opposed to
the higher prices usually paid by the retail pharmacies and reimbursed
by the state. The wholesale suppliers allege that the state would be
illegally supplanting them in the market. It has been suggested that
the proposed change would violate the federal anti-trust laws.

Title XIX of the Social Security Act, 42 U.S.C. §1396 et seq.,
establishes the program, known as "Medicaid," which provides medical
assistance to individuals who lack sufficient economic resources to
meet the cost of necessary medical services. Medicaid is a federal
matching-fund program administered in conjunction with participating
states. The states channel federal funds and state funds through
appropriate state agencies to the providers of medical services,
including pharmacies. The amount of payments to providers for various
services is largely within the discretion of the state subject to the
limits established in the Social Security Act and in regulations
promulgated under the act. Ostrow Pharmacies, Inc. v. Beal, 394 F.
Supp. 22, 25 (E.D. Pa. 1975). Medicaid programs for drug distribu-
tions similar to the program proposed in your request letter have been

upheld. See, e.g., Ostrow Pharmacies, Inc., supra. At issue in most cases is the compliance of the state program with the Social Security Act and its attendant regulations. Id. The effect of federal anti-trust laws on these Medicaid drug distribution programs, however, has not been addressed.

Subsections (a) and (f) of section 2 of the Clayton Act, 38 Stat. 730, c. 323, §2 (1914), as amended by the Robinson-Patman Act, 49 Stat. 1526, c. 592, §1 (1936) (15 U.S.C. §§13(a) and 13(f)), provide:

> (a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce . . . and where the effect of such discrimination may be substantially to lessen competition. . . .

> . . . .

> (f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.

In Jefferson County Pharmaceutical Association, Inc. v. Abbott Laboratories, 460 U.S. 150 (1983), the United States Supreme Court held that sales to and purchases by a state and its agencies are not immune as a matter of law from the sanctions of subsections (a) and (f) of section 2. The issue in Jefferson County, however, was narrow. The Court expressly limited its decision to state purchases made for the purpose of competing, with price advantages, against private enterprise in the retail market. 460 U.S. at 154.

The Court emphasized that its decision did not reach state purchases for use in "traditional governmental functions." Id. Further, the Court stated:

> Special solicitude for the plight of indigents is a traditional concern of state and local governments. If, in special circumstances, sales were made by a State to a class of indigents, the question presented, that we need not decide, would be whether such sales are 'in competition' with private enterprise. The District Court correctly assumed that the private and state pharmacies in

this case are 'competing pharmacies.'  656 F.2d,
at 98. . . .

460 U.S. at 154, n. 7.  Because your request involves distributions of
drug prescriptions to Medicaid recipients, the issue at hand is
whether such distributions are "in competition" with private enter-
prise.

The purpose of the department's Medicaid Vendor Drug Program is
to enable the state to provide medical assistance to needy individuals
and to enable the state to obtain all benefits for those persons
authorized by federal law.  See Hum. Res. Code §32.001 et seq.  The
federal anti-trust sanctions of subsections (a) and (f) of section 2
prohibit state action or state-created conditions which tend to fore-
close the access of competing sellers to all or part of the market
supplied by the state.  But in the instant case, because the state is
providing free prescriptions to Medicaid recipients, competing sellers
seek the money held by the real buyer -- the state.  No one contends
that competing sellers wish to shoulder the burden of supplying free
medication to indigents. Distributions under the department's proposed
change in the Medicaid Vendor Drug Program are therefore not "in
competition" with private enterprise.  Consequently, the proposed
change would not violate subsections (a) and (f) of section 2 of the
Clayton Act, supra, as amended by the Robinson-Patman Act, supra.

As indicated at the onset of this opinion, challenges to programs
such as the one you propose usually focus on compliance with the
Social Security Act and its attendant regulations.  You do not
indicate whether you anticipate a change in the number of retail
pharmacies which distribute drugs to Medicaid recipients.  The change
would affect primarily the wholesale suppliers.  It is therefore
unnecessary to decide whether the proposed change would impair the
Medicaid recipients' federal and state statutory right to choose their
providers of medical services.  See 42 U.S.C. §1396a(a)(23); 42 C.F.R.
§447.204; Hum. Res. Code §32.027(a).

Moreover, a challenge based on loss of access can be sustained
only if a state's dispensing fee structure actually fails to enlist
enough retail providers to give Medicaid recipients reasonable access.
DeGregorio v. O'Bannon, 500 F. Supp. 541, 547-50; see O'Bannon v. Town
Court Nursing Center, 447 U.S. 773 (1980).  Whether reimbursement
rates for dispensing drugs under a Medicaid program are so low that
they cause participating pharmacists to eventually drop out of the
program, thereby causing loss of reasonable services to Medicaid
recipients is a question of fact.  Pharmacists Society of Milwaukee
County, Inc. v. Wisconsin Department of Health and Social Services, 79
F.R.D. 405, 411-12 (E.D. Wisc. 1978); see also California Association
of Bioanalysts v. Rank, 577 F. Supp. 1342, 1359-60 (C.D. Cal. 1983).
Apart from the fact that this long range effect can only be determined

over a period of time, the opinion process established for this office by article 4399, V.T.C.S., does not encompass fact-finding.

## S U M M A R Y

A proposed change in the Medicaid Vendor Drug Program of the Texas Department of Human Services under which the department would purchase certain drug products for free distribution to Medicaid recipients and pay a distribution fee to pharmacies rather than purchasing the drug products from the retail pharmacies, would not be in competition with private enterprise. Consequently, the proposed program would not violate subsections (a) and (f) of section 2 of the Clayton Act, 38 Stat. 730, as amended by the Robinson-Patman Act, 49 Stat. 1526 (15 U.S.C. §§13(a) and 13(f)).

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General